USDC SCAN INDEX SHEET










TKL     3/27/06    15:08
3:06-CR-00298   USA V. CORONADO
*15*
*CRMEMSUP.*

GERALD SINGLETON, California Bar No. 208783
LAW OFFICES OF GERALD SINGLETON
1950 Fifth Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 239-2196

Attorneys for **Rodney Adam Coronado**



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(JEFFREY T. MILLER)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06cr0298 |
| Plaintiff, | Date: June 29, 2006<br>Time: 9:00 a.m. |
| v. | |
| RODNEY ADAM CORONADO, | STATEMENT OF FACTS AND<br>MEMORANDUM OF POINTS<br>AND AUTHORITIES IN SUPPORT |
| Defendant. | OF DEFENDANT'S MOTION |

## STATEMENT OF FACTS

At approximately 6:30 p.m. on August 1, 2003, Rodney Adam Coronado ("Mr. Coronado") gave a public speech in San Diego. Mr. Coronado is nationally-known proponent of animal rights who has worked throughout his life to stop the torture of animals. At the conclusion of his speech, an audience member asked Mr. Coronado what he had done in Michigan, a reference to a fire Mr. Coronado admitted to setting in a Michigan State animal testing laboratory in 1992. In response, Mr. Coronado briefly demonstrated what he had done, using a jug of apple juice as a prop. At the time Mr. Coronado answered the question, the speech was open to the public and he knew that federal law enforcement agents likely would be present.

The government did not take any action against Mr. Coronado for this speech for over two years. In August or September of 2005, Mr. Coronado received a "target letter" from the Office of the United States Attorney of the Southern District of California. This letter invited him to testify before the Grand Jury

DEFENDANT'S MOTION TO COMPEL
DISCOVERY AND PRESERVE EVIDENCE                    -1-                                06cr0298-JM

ostensibly convened to investigate a fire that occurred in San Diego during the night of July 31-August 1, 2003. As he had no knowledge related to the fire, Mr. Coronado declined to testify before the Grand Jury. However, because it was widely known that Mr. Coronado was a target of the government due to his outspoken activism on behalf of animal rights and the environment, Mr. Coronado suspected that he eventually be indicted by the Grand Jury. Accordingly, he contacted undersigned counsel, who contacted Assistant United States Attorney John N. Parmley and informed him that, if the government indicted Mr. Coronado, Mr. Coronado would voluntarily appear in San Diego.

On February 15, 2006, the government issued a sealed Indictment against Mr. Coronado charging him with one count of violating Title 18 U.S.C. § 842(p)(2)(A) (teaching or demonstrating the making of a destructive device with the intent that the knowledge be used to commit a federal crime of violence: to wit, arson). Mr. Coronado was arrested on February 22, 2006, in Arizona. He was released on bond and appeared before this Court on two separate occasions. Mr. Coronado was arraigned on the instant charges on March 23, 2006.

## I.

## MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

**Mr. Coronado requests all discovery in this case.** This request is _not_ limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." _See United States v. Bryan_, 868 F.2d 1032 (9th Cir. 1989). He further requests that all evidence in this case be preserved, and that **all tangible items** seized as a result of any search warrants, searches incident to arrest, or investigation of any kind be preserved until the conclusion of this case.

In addition to the items set forth below, Mr. Coronado requests a complete inventory of all items taken from his home, and the names of any individuals who have given testimony that is exculpatory to him. Specifically, if any individuals stated that Mr. Coronado spoke about the alleged destructive device in direct response to a question asked of him regarding what he had done in the Michigan incident, this is exculpatory information to which he is entitled. Indeed, _any_ statement which contradicts the government's version of what the question asked of Mr. Coronado was (i.e., how to build a "bomb for an action") is exculpatory to

Mr. Coronado. Accordingly, the defense is entitled to know the identity of each and every individual who stated that the question was anything other than that described by the government in its motion to have Mr. Coronado detained (*see* Government's Motion, p. 6:2).

(1) <u>Mr. Coronado's Statements</u>. The government must disclose to a defendant <u>all</u> copies of any written or recorded statements allegedly made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial, either in its case-in-chief or in rebuttal; *see id.*, any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) <u>Arrest Reports and Notes</u>. Mr. Coronado also specifically requests that the government turn over all arrest reports, notes and records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is <u>not</u> limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting officers, correspondence or memoranda, tapes, sworn statements, and/or prosecution reports pertaining to the defendant. *See* Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); *see also United States v. Anderson*, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming *Harris'* holding).

(3) <u>*Brady* Material</u>. Mr. Coronado requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt <u>and</u> which affects the credibility of the government's case. *Kyles v. Whitley*, 514 U.S. 419 (1995). Under *Brady v. Maryland, Kyles* and their progeny, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to

the accused. *See also United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976). As stated above, *Kyles* requires that the government make an active search for *Brady* material.

As set forth above, the defense believes that certain individuals who were either interviewed by the government or who testified before the grand jury stated that Mr. Coronado spoke about the alleged destructive device in direct response to a question asked of him regarding what he had done in the Michigan incident. This is exculpatory information, and Mr. Coronado is entitled to know the identify of any such witness so that the defense can interview this witness and possibly use his or her testimony at trial.

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The government must also produce this information under *Brady v. Maryland*. This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines, any information relevant to a Chapter Three adjustment, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. To the extent it exists, Mr. Coronado requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. This applies not only to evidence which the government may seek to introduce in its case-in-chief but also to evidence which the government may use as rebuttal. *United States v. Vega*, 188 F.3d 1150 (9th Cir. 1999). Mr. Coronado is entitled to "reasonable notice" so as to "reduce surprise," preclude "trial by ambush" and prevent the "possibility of prejudice," *id.*, and he requests such notice at least <u>three weeks</u> before trial in order to give the defense time to adequately investigate, move to exclude this evidence, and prepare for trial.

(7) <u>Evidence Seized</u>. Mr. Coronado requests production of evidence seized as a result of any search. Fed. R. Crim. P. 16(a)(1)(C). This includes copies of any and all documents found on Mr. Coronado at the time of his arrest, and any items taken from his home. It also refers to any electronic recordings of the speech itself (or the events before and after the speech). Said speech occurred on August 1, 2003.

(8) <u>Request for Preservation of Evidence</u>. Mr. Coronado specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case.

(9) <u>Tangible Objects</u>. Mr. Coronado requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, recordings videotapes, books, papers, documents, analyses, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Rule 16(a)(1)(C).

(10) <u>Expert Witnesses</u>. Mr. Coronado requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided at a minimum of three weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert. The defense requests a pre-trial *Daubert/ Kumho* hearing, separate and apart from trial, to determine (1) the relevance and reliability of the proposed expert testimony, and (2) the admissibility of the expert's testimony and the qualifications of any and all experts.

(11) <u>Evidence of Bias or Motive to Lie</u>. Mr. Coronado requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. Such motives include, but are not limited to, the fact that the potential witness may be seeking, anticipating or requesting a reduced sentence from the government or the dismissal of charges filed by the government. It also applies to situations where a witness has received monetary compensation, or cases in which the government has elected not to file charges against the witness at all. As set forth below, Mr. Coronado is entitled to all such information under *Giglio v. United States,* 405 U.S. 150 (1972) and its progeny.

(12) <u>Impeachment Evidence</u>. Mr. Coronado requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613; *Brady v. Maryland,*
//

DEFENDANT'S MOTION TO COMPEL
DISCOVERY AND PRESERVE EVIDENCE            -5-                              06cr0298-JM

373 U.S. 83. This includes any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. Any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(14) <u>Jencks Act Material</u>. Generally, the government must only produce such information pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. However, Mr. Coronado requests production of all Jencks material two (2) weeks in advance of trial in order to permit him to properly prepare for trial. Advance production will avoid the possibility of delay at the request of defendant to investigate the *Jencks* material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963); *see also United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that where an agent goes over interview notes with subject interview notes are subject to Jencks Act).

(15) *Giglio/ Henthorn* <u>Information</u>. Pursuant to *Giglio*, 405 U.S. 150, Mr. Coronado requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of <u>any</u> government witnesses, including, but <u>not</u> limited to, law enforcement officers. Mr. Coronado requests that the Assistant United States Attorney assigned to this case personally attempt to discover whether or not any *Giglio* and *Henthorn* information exists. He further requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. *Kyles*, 514 U.S. at 419; *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *United States v. Lacy*, 896 F. Supp. 982 (N.D. Ca. 1995).

As a threshold matter, the prosecutor has the obligation to inquire of his or her agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists. However, the prosecutor's duty to ensure that the defense is provided with all relevant impeachment material requires

additional effort. The Attorney General's policy on disclosure of *Giglio/Henthorn* material states that "allegations that cannot be substantiated, are not credible, or have resulted in the exoneration of an employee generally are not considered to be potential impeachment information." Given the tendency of members of law enforcement agencies to cover-up for one another, it is highly unlikely that many complaints will be deemed "substantiated." Thus, most complaints <u>not</u> only will not go into the file of the agent, but may <u>not</u> be disclosed even to the prosecutor. Accordingly, the defense requests that the prosecutor contact each agent involved in this case and inquire of them, under penalty of perjury, whether or not any complaints have been filed against them. If complaints have been filed, the defense requests an opportunity to review them in order to determine if the complaints contain potential impeachment material. At minimum, however, if such reports exist, this Court should review them in camera and determine if they contain relevant information.

(16) <u>Informants and Cooperating Witnesses</u>. Mr. Coronado requests disclosure of the names and addresses of all informants or cooperating witnesses, if any exist, whom were used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Coronado. *Roviaro v. United States*, 353 U.S. 52, 61-62 (1957). Mr. Coronado also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio*, 405 U.S. 150. Such information would include what, if any, inducements, favors, payments or threats were made to the witness.

(17) <u>Agreements Between the Government and Witnesses</u>. In this case, if there are cooperating witnesses who have committed crimes but were not charged so that they may testify for the government in this case, the defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and any governmental entity. This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.[1]

---

[1] Pursuant to *United States v. Sudikoff*, 36 F. Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u> which relate to the witnesses'

(18) <u>Laboratory Analysis</u>. Mr. Coronado requests the results of any laboratory report and/or analysis performed upon any evidence seized in this case.

(19) <u>Residual Request</u>. Mr. Coronado intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Coronado requests that the government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## II.

## CONCLUSION

For the foregoing reasons, Mr. Coronado respectfully requests that this Court issue an order granting his motion.

Respectfully submitted,

Dated: March 24, 2006

By: *(signature)*
GERALD SINGLETON
Law Offices of Gerald Singleton
Attorneys for Rodney Adam Coronado

---

statements regarding this case, any promises, implied or express regarding punishment/prosecution or detention of these witnesses, any payment made to any witness, any agreement sought, bargained for or requested, on the part of the witness at any time regarding non-prosecution, the ability to remain in the U.S., and/or the witnesses' return to Mexico.