# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 06cr0298 JM |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS INDICTMENT |
| vs. | |
| RODNEY ADAM CORONADO, | |
| Defendant. | |

Defendant Rodney Adam Coronado ("Coronado") moves to dismiss the indictment charging him with violation of 18 U.S.C. § 842(p)(2)(A), Distribution of Information Relating to Explosives, Destructive Devices and Weapons of Mass Destruction, on grounds that the statute is impermissibly overbroad and excessively vague. The Government opposes the motion. For the reasons set forth below, the court denies the motion to dismiss the indictment.

## BACKGROUND

On February 15, 2006, Coronado was charged in a single count indictment with violation of 18 U.S.C. § 842(p)(2)(A), Distribution of Information Relating to Explosives, Destructive Devices and Weapons of Mass Destruction. The indictment alleges that on August 1, 2003, Coronado "did teach and demonstrate the making and use of a destructive device and did distribute by any means, information pertaining to, in whole or in part, the manufacture of a destructive device, with the intent that the

teaching, demonstration, and information be used for, and in furtherance of, an activity that constitutes a federal crime of violence, to wit, arson."

The parties identify the following events and background information. As the identified facts appear to be largely undisputed by the parties, they will be considered as true for the purpose of addressing the current motion to dismiss the indictment. Coronado is a self-characterized radical animal and environmental rights activist. In 1992 Coronado participated in an action that destroyed fur-industry research facilities involved in animal testing at Michigan State University. Coronado pled guilty and was sentenced to 57 months incarceration.

On August 1, 2003 Coronado gave a lecture on militant animal and earth liberation rights at the Lesbian Gay Bisexual Transgender Center located in the Hillcrest area of San Diego, California. The flyer promoting the lecture indicated that Coronado was an individual who "lives by the principles of direct action. Rod Coronado talks beyond theory." (Motion, Exh. 1). The flyer also represented that Coronado participated in an action that "sunk two illegal whaling ships off the coast of Iceland." The advertisement also touted Coronado's experience as a "hunt saboteur" defending threatened species. Coronado's speech attracted media attention because, on the day before the lecture, an apartment structure in the University Town Center area of San Diego had been destroyed by arson, causing as estimated loss of $50 million. At the scene of the fire, investigators found a large banner reading "IF YOU BUILD IT – WE WILL BURN IT. THE ELF'S (sic) ARE MAD.[1]"

During the speech, recorded by FBI agents present at the meeting, Coronado spoke about his experiences and beliefs in direct action in support of animals and the environment against human exploitation. After his prepared remarks, Coronado fielded questions from the audience. One unidentified attendee asked, according to Coronado, "tell us about the device you used at the Michigan State arson." (Motion at p.3:28).

---

[1] ELF is the acronym for Earth Liberation Front. The Government asserts that ELF is the name of a group of loosely organized cells of individuals dedicated to using illegal means to pursue a radical environmentalist agenda. (Oppo. at p.2, fn. 1).

The Government, in contrast, represents that the attendee asked how she could "make a bomb for an action." (Oppo. at p. 5:7). In response to the question, Coronado explained that he did not use a bomb, but an incendiary device. He then approached the food table, picked-up a plastic one-gallon apple juice container, and described how he made the device. Coronado also commented that he "wouldn't be surprised if investigators found a device similar to this at the fire scene last night," a reference to the $50 million arson fire in the University Town Center the previous day. (Oppo. at p.5:15-16).

Coronado is currently serving a ten month federal sentence in the District of Arizona for a conviction for conspiracy to interfere with an officer, in relation to his attempts to sabotage a mountain lion hunt.

## DISCUSSION

**The Statute and Brief Legislative History**

Defendant is charged with violating 18 U.S.C. § 842(p)(2)(A), which provides in pertinent part:

It is unlawful for any person --

(A) to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence.

In 1996, following the Oklahoma City bombing, Senators Feinstein and Biden proposed the legislation that would eventually become §842(p)(2)(A). As originally proposed, the statute set forth a scienter requirement that "the person intends or knows, that such explosive materials or information will likely be used for, or in furtherance of, an activity that constitutes a Federal criminal offense or a criminal purpose affecting interstate commerce." 131 Cong. Rec. S7875 (daily ed. June 7, 1995).

As part of the legislative process, the Department Of Justice ("DOJ") prepared a report regarding the availability of bombmaking information on the Internet and in

print, and on the First Amendment implications of federal laws designed to curtail the dissemination of bombmaking information. The DOJ was required to complete this process pursuant to section 709 of the Anti-Terrorism and Effective Death Penalty Act of 1996. See Pub. L. No. 104-132 § 709(a), 110 Stat. 1214, 1297 (1996). In April 1997, the DOJ submitted to Congress its report entitled <u>1997 Report on the Availability of Bombmaking Information</u> ("Report"), http://www.usdoj.gov/criminal/cyber-crime/bombmakinginfo.html. The Report generally concluded that bombmaking information is readily available for anyone with access to the Internet. The report noted that by requiring knowledge of someone else's present intent, not of a future event, the knowledge requirement would be less problematic from a constitutional perspective. See Report at VI.B.

The Report also noted that there then existed four different ways to establish criminal liability for the dissemination of bombmaking information and related conduct: federal statutes prohibiting (1) conspiracy, (2) solicitation, (3) aiding and abetting and (4) 18 U.S.C. § 231. Section 231, the precursor statute to 18 U.S.C. § 842(p)(2)(A), was directed specifically at the "teaching or demonstrating" of techniques related to the use or manufacture of explosives and firearms. See Report at IV.

Ultimately, the statute was enacted in its present form.

**Facial Overbreadth**

Coronado raises a facial challenge to § 842(p)(2)(A) contending that the statute is overbroad because it punishes a substantial amount of constitutionally protected speech. In the area of First Amendment expression, "an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." Forsyth County v. Nationalist Movement, 505 U.S. 123, 129 (1992). A party may

> challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, . . . and in cases where the ordinance sweeps too broadly penalizing a substantial amount of speech that is constitutionally protected.

Id. at 129-30. Overbroad statutes "may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984).

The scope of the First Amendment overbreadth doctrine must be "carefully tied to the circumstances in which facial invalidation of a statute is truly warranted." New York v. Ferber, 458 U.S. 747, 768 (1982). Striking down a statute under facial attack is employed "with hesitation and then 'only as a last resort.'" Id. (quoting Broderick v. Oklahoma, 413 U.S. 601, 613 (1973)). Consequently, where conduct and not merely speech is involved, a statute may be stricken only where the overbreadth is "substantial," Ferber, 458 U.S. at 768, and justified by "weighty countervailing policies." Id, at 770 (quoting United States v. Raines, 362 U.S. 16, 22-23 (1960)). Finally, "[o]verbreadth scrutiny is less rigid when the questioned legislation regulates 'conduct in the shadow of the First Amendment, but do[es] so in a neutral, noncensorial manner.'" United States v. Gilbert, 813 F.2d 1523, 1530 (9th Cir. 1986) (quoting Broderick, 413 U.S. at 614).

Applying these principles to the facial overbreadth challenge, the court concludes that the statute is not substantially overbroad. To the extent Coronado argues the statute is too broad because it could be applied to individuals who may innocently teach or demonstrate the construction of a destructive device, or otherwise provide such information, this "argument does not identify a constitutional defect." Hill v. Colorado, 530 U.S. 703, 730-31 (2000). The specific focus of the statute is not on mere teaching, demonstrating, or disseminating information on how to construct a destructive device, but upon teaching, demonstrating, or disseminating information with the specific intent that the knowledge be used to commit a federal crime of violence. Moreover, as Hill teaches, where conduct and not merely speech is implicated the overbreadth of a statute must be judged in relation to its legitimate sweep. Id. at 732.

While the conduct at issue (i.e. the teaching or demonstration of the making of

a destructive device with specific intent to commit arson) falls within the shadow of the First Amendment in the sense that such conduct involves speech, the First Amendment has never been held to immunize conduct "merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949); Brown v. Hartlage, 456 U.S. 45, 54 (1982) (the immunities afforded by the First Amendment do not extend to an illegal agreement that takes the form of words, or underlying conduct based upon such words); United States v. Barnett, 667 F.2d 835, 842 (9th Cir. 1982) ("The First Amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose."). The statute does not seek to censor the mere teaching or demonstration of a destructive device. It is only when the teaching or demonstration of a destructive device is coupled with specific intent to commit a federal crime of violence that an individual runs afoul of the statute. See Hill, 530 U.S. at 730-32.

As noted by the parties, there are no authorities directly addressing a facial or an as applied attack on the constitutionality of 18 U.S.C. § 842(p)(2)(A). However, several cases have addressed a substantially similar predecessor statute, 18 U.S.C. § 231(a), and rejected both facial and as applied constitutional challenges. Section 231(a)(1) provides:

> Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, ***or*** in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function . . . [s]hall be fined under this title or imprisoned not more than five years, or both. (Emphasis added).

The term "civil disorder," in turn, was defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. §232(1). In United States v. Featherston, 461 F.2d 1119 (5th Cir. 1972) the

defendants made a facial and an as applied attack on § 231(a), arguing that the statute was both unconstitutionally overbroad and vague. The Fifth Circuit held that the statute's intent requirement narrowed "the scope of the enactment by exempting innocent or inadvertent conduct from its proscription." Id. at 1121. The Court concluded that "the statute does not cover mere inadvertent conduct. It requires those prosecuted to have acted with intent or knowledge that the information disseminated would be used in the furtherance of a civil disorder." Id. at 1222. In light of the intent element, the Fifth Circuit concluded that § 231(a) "is not unconstitutional on its face." Id. at 1122.

Similarly, the Seventh Circuit affirmed the district court's finding that the constitutional questions raised by § 231(a), in the context of facial and as applied overbreadth and vagueness challenges, were "wholly insubstantial." National Mobilization Committee to End the War in Viet Nam v. Foran, 411 F.2d 934, 936 (7th Cir. 1969). The Seventh Circuit noted that statutory phrases such as the teaching of "technique[s] capable of causing injury or death to persons" is broad but its reach is constitutionally narrowed by requiring that such teaching or demonstration be accompanied by the "knowing, or having reason to know or intending" language of § 231(a). Id. at 937.

Coronado's authorities are not inapposite. Virtually all of the authorities cited by Coronado raise as applied challenges, not facial challenges. The essence of Coronado's argument is that he was simply engaged in protected speech when he demonstrated how he constructed the incendiary device he employed to destroy fur-industry research facilities at Michigan State University. Arguing these facts – none of which are properly before this court – he concludes that his speech or demonstration is protected under Brandenburg v. Ohio, 395 U.S. 444 (1969). In Brandenburg the Supreme Court considered an as applied challenge to the constitutionality of the Ohio Criminal Syndicalism Act which criminalized "advocating . . . the duty, necessity or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of

accomplishing industrial or political reform and for voluntarily assembling with any society, group or assemblage or persons formed to teach or advocate the doctrines of criminal syndicalism." Id. at 444-45. Brandenburg, leader of a Ku Klux Klan group, was shown on film – accompanied by about 12 hooded Klansmen – making derogatory comments about African-Americans and Jews. He was found guilty and sentenced to one to ten years imprisonment.

The Supreme Court began its analysis by noting that

> the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action, . . . the mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence is not the same as preparing a group for violent action and steeling it to such action. A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control.

Id. at 447-48 (citations omitted).

Applying these principles to the Ohio statute, the statute was invalidated. The statute criminalized "persons who 'advocate or teach the duty, necessity, or propriety' of violence 'as a means of accomplishing industrial or political reform'; or who publish or circulate or display any book or paper containing such advocacy; or who 'justify' the commission of violent acts 'with intent to exemplify, spread or advocate the propriety of the doctrines of criminal syndicalism'; or who 'voluntarily assemble' with a group formed 'to teach or advocate the doctrines of criminal syndicalism.'" Id. at 448. As the statute did not distinguish "mere advocacy" from "incitement to imminent lawless action," the statute necessarily failed. Id.

Coronado contends that the Government may not proscribe constitutionally protected speech under Brandenburg unless it is likely to incite others to imminent lawless action.[2] Coronado argues that because the indictment does not allege that the

---

[2] Regulation of speech in a public forum is subject to strict scrutiny. See International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678-79 (1992). When a content-based speech restriction is challenged, the Government has the burden to prove that the restriction serves a

complained of conduct was likely to incite imminent lawless action, the indictment must be dismissed. This argument fails for three reasons. First, the argument ignores fundamental differences between the Ohio Criminal Syndicalism Act at issue in Brandenburg, and the statute at bar. As set forth above, the statute at bar does not target abstract advocacy, teaching, or speech as criminalized by the Ohio Criminal Syndicalism Act. Consequently, for purposes of a facial challenge, Brandenburg and its progeny cannot serve as the template by which the subject statute is analyzed. Second, the argument fails to appreciate that the issues addressed by the Supreme Court in Brandenburg arose in the context of an as applied analysis. The focus of the present facial attack is on the statute, the indictment, and well-established overbreadth principles. Coronado's proffered factual arguments are more properly addressed to an as applied analysis, which at the very least must await the development of an evidentiary record. Third, the argument makes particularly apt the following insight from Featherston:

> The words "clear and present danger" do not require that the government await the fruition of planned illegal conduct of such nature as is here involved. . . . "[T]he words cannot mean that before the Government may act, it must wait until the putsch is about to be executed, the plans have been laid and the signal is awaited. . . ."

Featherston, 461 F.2d at 1122 (citations omitted).

Coronado further contends that the following statutory language is facially overbroad: ". . . the distribut[ion] by any means [of] information pertaining to, in whole or in part, the manufacture or use of an explosive [or] destructive device . . ." 18 U.S.C. § 842(p)(2)(A). As the language criminalizing the "distribution of information by any means, in whole or in part" is imprecise, id., Coronado argues the statute is therefore overbroad. This challenged phrase is taken out of context as a whole. As set forth above, the reach of the statute is directed not to the expressive principles of teaching

---

compelling state interest that is narrowly tailored to the desired end. See Center for Bio-Ethical Reform, Inc. v. City and County of Honolulu, 455 F.3d 910, 919 (9th Cir. 2006). Regulation of pure speech has traditionally been permitted in the context of obscene materials, fighting words, public nuisances, and imminent lawless action. See Hess v. Indiana, 414 U.S. 105, 107-08 (1973).

alone, but to conduct or a call for action where the teaching or demonstration of such destructive devices is committed with the specific intent that such teaching or demonstration be used to carry-out a federal crime of violence. While there may be certain circumstances under which the statute may be overbroad as applied, any overbreadth that may exist will only be apparent after the presentation of evidence at the time of trial. At that time, any perceived overbreadth may be cured by appropriate jury instructions.

In sum, the court denies a facial attack to 18 U.S.C. § 842(p)(2)(A) based upon the overbreadth doctrine.

**Facial Vagueness**

"It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits. . . ." Giaccio v. Pennsylvania, 382 U.S. 399, 402-03 (1966). In order to survive a vagueness challenge, a statute need only "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and be susceptible to application "in a manner that does not encourage arbitrary and discriminatory enforcement." Hill, 530 U.S. at 732. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56 (1998).

Where a statute implicates First Amendment freedoms, "vagueness scrutiny is more stringent." California Teachers Ass'n v. State Bd. Of Educ., 271 F.3d 1141, 1150 (9th Cir. 2001). In recognition that words and their meanings cannot be ascertained with "mathematical certainty," id., a "statute's vagueness exceeds constitutional limits if its 'deterrent effect on legitimate expression is . . . both real and substantial, and if the statute is [not] readily subject to a narrowing construction'" by the court. Id. at 1151 (quoting Young v. American Mini Theaters, Inc., 427 U.S. 50, 60 (1976)).

Here, the deterrent effect of § 842(p)(2)(A) on legitimate expression is insubstantial and remote. The statute affords people of ordinary intelligence the opportunity to understand what conduct is prohibited and does not foster arbitrary, discriminatory, or capricious enforcement.[3] This is particularly true in light of the statute's intent requirement that such teaching or demonstration must be carried out with the intent to commit a federal crime of violence. See Hill, 530 U.S. at 732.

Coronado also argues that it is readily conceivable that the statute may be applied to criminalize mere speech. Coronado focuses on language from § 842(p)(2)(A) which makes "[i]t unlawful . . . to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction." For example, Coronado argues that if a novelist were to provide information about the construction of a destructive device and assert a political message such conduct would be criminalized under the statute. Another example advanced by Coronado is where a "political speaker tells an audience that gasoline can be used to make destructive device." (Motion at p.19:22-23). Here, as in Hill, "there is little doubt that imagination can conjure up hypothetical cases in which the meaning" of a statute as applied to a particular set of facts is uncertain. Hill, 530 U.S. at 732. However, that is not the test for vagueness.[4]

In Hill, the Supreme Court considered and rejected overbreadth and vagueness facial challenges to a Colorado statute which regulated speech-related conduct within 100 feet of the entrance to any health care facility. The regulation made it unlawful for any person to knowingly approach within eight feet of another person, without that person's consent "for the purpose of passing a leaflet or handbill to, displaying a sign

---

[3] As set forth above, the operative terms of § 842(p)(2)(A) are directed not to the expressive principles of speech, but to conduct consisting of the teaching or demonstration of the making of a destructive device with the specific intent that such teaching or demonstration be used to carry-out a federal crime of violence.

[4] The court notes that Coronado's examples of purported criminal liability under the statute necessarily fail because they fail to allege the indispensable element of specific intent to commit a federal crime.

to, or engaging in oral protest, education, or counseling with such other person." Id. at 707. The regulation did not place any restrictions on the content of any message but made "it more difficult to give unwanted advice, particularly in the form of a handbill or leaflet, to persons entering or leaving medical facilities." Id. at 708. The petitioners argued that the regulation violated their First Amendment speech rights.

The petitioners argued that the statute was vague because of uncertainties regarding words such as "protest, education, or counseling" and with language stating that the statute applied to persons who "knowingly" approached within eight feet of another person. As it was unclear whether an outstretched arm would be considered "approaching" another person, petitioners argued that the statute was overbroad. The Supreme Court gave short shrift to this argument, noting that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on the statute when it is surely valid 'in the vast majority of its intended applications.'" Id. at 733 (quoting United States v. Raines, 362 U.S. 17, 23 (1960)). The Hill court further rejected the argument that the language of the statute would lead to arbitrary and discriminatory enforcement. Id. at 732. The reasoning of Hill applies with great force to the facial vagueness challenge by Coronado to 18 U.S.C. § 842(p)(2)(A).

In sum, the statute survives a facial vagueness attack.

**The As Applied Attacks**

Coronado contends that § 842(p)(2)(A) is unconstitutionally overbroad and vague as applied. This argument is premature because, as noted above, the factual record has yet to be developed in this case. Until an evidentiary record is created, neither the court nor parties are able to determine whether the statute, as applied in an evidentiary context, raises substantial constitutional issues. The "District Court should not be forced to decide . . . constitutional questions in a vacuum." W.E.B. DuBois Clubs of America v. Clark, 389 U.S. 309, 312 (1967). Factual developments at trial will determine and focus any First Amendment issue. Further, as the factual record is

1 developed at trial, a First Amendment jury instruction – addressing the potential
2 concerns raised by Coronado – may be appropriate. See United States v. Freeman, 761
3 F.2d 549, 551-52 (9th Cir. 1982) (circumstances of the case determine whether a First
4 Amendment jury instruction is appropriate). At this stage in the prosecution, however,
5 any ruling on the as applied challenges to contested proffered facts is speculative.
6 Accordingly, the court declines to reach Coronado's as applied challenges.

In sum, the motion to dismiss the indictment is denied.

**IT IS SO ORDERED.**

DATED: November 15, 2006

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties